[*Ex parte.* Hood et al.]

# *Ex parte* Hood *et al.*

## *Petition for Mandamus.*

1. *Effect of appeal from final decree by giving security for costs of appeal.*—An appeal from a final decree, of a court of chancery, is a matter of right if the party appealing gives security for the costs of appeal, and, when taken in this mode, the appeal does not operate a divestiture or suspension of the authority of the court to proceed in the execution of the decree, but it is the duty of the court to do so, on the application of any party in interest, as if the appeal had not been taken.

2. *Same.* When an appeal is taken from a final decree of the chancery court to the Supreme court, by giving security for the costs of the appeal, the whole case is thereby so far removed into the Supreme Court as that the chancery court is without power to make any order or decree which would disturb or displace the equity as settled by the final decree.

3. *Discharge of receiver pending appeal.*—It is matter within the sound discretion of the chancellor, to determine whether a receivership shall be terminated, or continued, pending an appeal which does not operate a divestiture or suspension of the duty and authority of the chancery court to proceed in the execution of the final decree from which the appeal is taken, such decree not in terms having terminated the receivership and directed the disposition of the funds in the possession of the receiver.

4. *Same; case at bar.*—Where creditors of an attachment defendant filed a bill attacking the attachment for fraud, and a receiver was appointed to take charge of the goods attached, and the complainants appealed from a decree denying them relief, and ordering a reference to ascertain the state of the receiver's account and the amount due the attachment plaintiffs, but gave only a bond for costs, and the referee reported the amount in the receiver's hands to be $17,000, and the amount due such plaintiffs, for which they had recovered judgment, to be $23,00?, which report was approved; such appeal did not prevent the court from terminating the receivership, and directing the receiver to pay the money to such judgment plaintiffs; but where such judgment plaintiffs were nonresidents, the court properly refused to terminate such receivership, in the absence of security for the return of the funds in the event of a reversal of the decree appealed from.

Original application for mandamus before the Supreme Court:

VoL. 107.

[*Ex parte.* Hood et al.]

In this case Thomas G. Hood and others, composing the firm of Hood, Foulkrod & Co., apply to the Supreme Court, by formal petition, for a writ of *mandamus* directed to the Hon. Thomas Cobbs, as chancellor, commanding him to entertain a motion made before him by the petitioners in the case of *B. Brownold et al. v. George Passe et al.*, and to grant said motion.

The case made by the petition is as follows : Hood, Foulkrod & Co. sued out a writ of attachment against George Passe, doing business as George Passe & Co., on November 19th, 1892, and caused the same to be levied on his stock of goods in the city of Birmingham. Two days afterwards, B. Brownold and others, as creditors of said George Passe & Co , filed their bill in the chancery court of Jefferson county, attacking said attachment of Hood, Foulkrod & Co. for alleged fraud ; and upon the filing of said bill the chancellor appointed a receiver to take charge of the stock of goods that had been attached. No injunction was obtained against the prosecution of the attachment suit by Hood, Foulkrod & Co.; and in February, 1893, they recovered a judgment against said Passe in their attachment suit for over $20,000. In the chancery suit of *B. Brownold et al. v. George Passe et al.*, the chancellor rendered a decree in January, 1895, holding that the complainants were not entitled to relief, and ordered that the register hold a reference to ascertain the state of the receiver's account, and also the amount of the debt of Hood, Foulkrod & Co. against said Passe. From this decree, the complainants in the chancery cause took an appeal to the supreme court, by filing security for costs of the appeal. Subsequent to this appeal, the register reported upon the receiver's account, which, by agreement of the parties, was in all things confirmed. This report showed that the receiver had on hand about $17,000, after paying the expenses of the receivership and prior liens, leaving that amount subject to the attachment suit and judgment. The register also reported, in March, 1895, the amount of the debt of Hood, Foulkrod & Co., as shown by the judgment in the attachment suit, to be over $23.000. No objection was filed to this report; and on May 24th, 1895, it was confirmed by the chancellor.

The present petitioners, Hood, Foulkrod & Co., thereupon moved the chancellor to terminate the receiver-

ship by directing the payment to them of the money in the hands of the receiver, which had been adjudged to belong to the petitioners, and order the receiver, upon so doing, to be discharged. Upon considering this motion the chancellor decreed that he had no authority or jurisdiction to entertain the motion, on account of the pendency of the appeal, stating in his decree thereon, that to grant the motion would be to affect the equities of the parties; and he, therefore, declined to grant said motion, until the supreme court decided the chancery suit then on appeal. Hood, Foulkrod & Co. then filed the present petition in the supreme court.

Cabaniss & Weekly, for the petitioners.—It sufficiently appears from the order of the chancellor, that he has refused to pass upon the merits of the motion, upon the erroneous assumption that he had not jurisdiction to entertain it, and hence that he has not considered nor passed upon the merits of the petition in the sense which the law contemplates. If petitioners were entitled to have said motion passed upon or granted, it is clear the supreme court in the exercise of its revisory power over inferior courts will compel the chancellor to pass upon the merits of the motion, and to grant same. *Skelton v. Robinson,* (Ala.) 16, So. Rep. 74; *Ex parte Sibert,* 67 Ala. 349; *Mobile Mutual Ins. Co. v. Cleveland,* 76 Ala. 321.

When a defendant in an action in which a receiver is appointed, finally obtains judgment therein in his favor, the entry of judgment has the effect of terminating the receiver's functions, although the plaintiff in the action perfects his appeal to an appellate court.—*High on Receivers* § 833; *Ireland v. Nichols,* 40 How. Pr. 85; s. c. 9 Ab. Pr. N. S. 71.

Under our statutes, an appeal does not of itself supersede or arrest the execution of a judgment or decree. A bond with sufficient sureties, having the conditions and payable as directed by the statute, must be executed and filed, or the party obtaining the judgment and decree is entitled to proceed in its execution.—Code of 1886, § § 3623-3625; Code of 1876, § § 3927-3928; Revised Code, § § 3489-3490; Code of 1852, § § 3019-3020; *Ex parte Sibert,* 67 Ala. 349; *Clark v. Knox,* 65 Ala. 401;

[*Ex parte*. Hood *et al.*]

*Montgomery Gas Light Co. v. Merrick* 61 Ala. 534; *Drake v. Webb*, 63 Ala. 596.

The security should be adapted to the situation of each particular case.—*Hughes v. Hatchett*, 55 Ala. 539, p. 547.

The well established legislative and judicial policy of the State is to require imdemnity and security to litigants for such damages as are the probable result of a suspension of the enjoyment by them of their ascertained rights. In the absence of statutes, courts have the inherent power to require such security and they are accustomed to exercise it. *Malone v. Marriott*, 64 Ala. 486; *Skipper v. Foster*, 29 Ala. 330.

A final decree is one which settles *all* the equities of the case and its final character is not destroyed because of the necessity of ulterior proceedings to carry it into execution. Subsequent proceedings, such as references to the register, taking accounts, making sales etc., do not affect the equities settled by decree. but they are simply in execution thereof.—*Jones v. Wilson.* 54 Ala. 50 ; *Ex parte Branch*, 63 Ala. 383.

If it should he held that there is no statutory provision applicable to the present case, requiring or authorizing a *supersedeas* bond, then it must be also held that the chancellor erred in supposing he had no jurisdiction or authority to make the desired order, since appeals in chancery, do not operate of their own force and effect to stay or suspend proceedings under the decree appealed from.—2 Dan'l Ch. Pr. 1467 ; *Hart v. Albany*, 3 Paige Ch. 381 ; *Hovey v. McDonald*, 109, U. S. 160; Bk. 27 L. Ed. 891 ; *Slaughter House cases*, 77 U. S. 297 ; Bk. 19 L. Ed. 922 ; *Walburn v. Ingilby*, 1 M. & K. 61, 84 ; *Huguenin v. Baseley*, 15 Ves. 180, 184 ; *Waldo v. Caley*, 16 Ves. 206, 215 ; *Willan v. Willan*, 16 Ves. 216 ; *Way v. Foy* 18 Ves. 452.

Such being the English rule, it would be followed in this state in cases where the statutes of this state and the decisions of the supreme court do not apply.—Chan. Pr. Rule 7, Code of 1886, p. 811 ; *Schenck v. Conover*, 13 N. J. Eq. 31.

In New York the rule was that an appeal in the first instance, operated a stay, but the successful party might apply to the Chancellor for leave to proceed notwithstanding the appeal. This leave, in that state, was

[*Ex parte.* Hood *et al.*]

granted, almost of course, unless the appellant made appellee secure.—See 1 N. Y. Chancery, Lawy. Ed. 554, Note, to case of *Messonnier v. Kauman,* 3 John Ch. 66; *Green v. Winter,* 1 John. Ch. 77.

The Chancellor was evidently in error in supposing the order asked for affected the equities, and he should have entertained the motion, whether the English or New York rule be applicable, unless appellants indemnified petitioners by a bond, or otherwise made them secure, the receiver should have been discharged.

PER CURIAM.—An appeal from a final decree of a court of chancery, is matter of right if the party appealing gives security for the costs of appeal. An appeal taken in this mode does not operate a divestiture or suspension of the authority of the court to proceed in the execution of the decree. Whatever measures are necessary for the execution of the decree, it is the duty of the court on the application of a party in interest, to pursue, as if the appeal had not been taken. If, in this respect, it is intended to stay the authority of the court, the statutes require that bond with security, with penalty and conditions adapted to the character of the decree, known and recognized as a *supersedeas* bond, be given. The present appeal was taken on a mere suretyship for costs. In the general proposition on which the chancellor proceeded, that the appeal removed the case wholly and absolutely into this court, so far as the equities of the case were involved, and that it was not in his province to make any order or decree which would disturb or displace them as settled by the final decree, there must be unqualified concurrence. If this were not true, it is obvious, the case would at one and the same time be pending in two courts, each having and capable of exercising authority over it; the authority of the lower court, of necessity, yields to the authority of the court the law invests with the higher jurisdiction. The error of the chancellor, seems to lie in the supposition, that his power and duty to proceed in the execution of the decree, were suspended by the appeal, though the measures necessary, may directly or indirectly affect the equities of the case: the duty and authority results from the statutes, which in effect distinguish the operation and effect of an appeal taken only on a suretyship for

the costs of the appeal, and when a supersedeas bond is given.

The error of the opinion of the chancellor, does not necessarily render erroneous the order refusing to discharge the receiver and directing him to pay over the moneys in his hands to the petitioners. A receivership usually terminates on the termination or the suit in which the receiver is appointed. Cases will arise, however, of peculiar exigencies, which may require that the receivership be continued; or if it be not continued that the court should not absolutely part with the custody of the funds in the possession of the receiver. When such cases arise, it is matter within the sound judicial discretion of the chancellor, to determine whether the receivership shall be terminated, or continued, pending an appeal, which does not operate a divestiture or suspension of the duty and authority to proceed in the execution of the final decree, from which the appeal is taken; that decree not in terms having terminated the receivership, and directed the disposition of the funds in the possession of the receiver. In such cases, the termination of the receivership, and the disposition of the funds in his possession, is in the nature of a proceeding supplemental or additional to the ordinary process of the execution of a final decree; and we repeat, in employing them, the chancellor has a judicial discretion to be exercised in view of the exigencies of the particular case.

A continuance of the receivership in this case, is necessary only for the safe-keeping of the funds, and the preservation of the control of the court over them. The formal continuance of the application, a matter of which the petitioners could not have complained, would have operated, if the continuance had been repeated, to continue the receivership. Properly, the chancellor did not continue the application, but denied it, affording opportunity for the revision of his action. The fund is large; the petitioners reside without the State; if the receivership had been terminated, and the court had parted with the custody of the funds absolutely, as was solicited by the petitioners, in the event of a reversal of the decree, restitution could be compelled only by resort to the courts of the State in which the petitioners reside, and restitution would be dependent on their ability to

make it. Under these circumstances, we are of opinion, in the exercise of a judicial discretion, the chancellor could have properly refused the application. As this is true, the reason the chancellor gave for the refusal is immaterial. The conclusion or judgment of a court, is often right, though there is error in the reasoning by which it is reached.

The petitioners can renew their applications; and we deem it proper to say, as the case is now presented, if it is accompanied by security the chancellor approves, guaranteeing the restitution of the funds in the event of a reversal of the decree, the receivership ought to be terminated, and the funds paid over to the petitioners.

For the reason given, the application for mandamus must be denied at the cost of the petitioners.